Hampton District Court
No. 2007-808

RITA MACPHERSON

v.

JAY S. WEINER

Submitted: September 16, 2008
Opinion Issued: October 30, 2008

Rita MacPherson, by brief, *pro se.*

*Troy Watts,* of North Woodstock, and *Neil F. Faigel,* of Andover, Massachusetts, by brief, for the defendant.

DUGGAN, J. The defendant, Jay S. Weiner, appeals an order of the Hampton District Court (*Frasier,* J.) granting the request by the plaintiff, Rita MacPherson, to extend a final protective order for an additional five years. *See* RSA 633:3-a, III-c (2007). We affirm.

The record reveals the following. On September 22, 2005, the plaintiff obtained a final protective order against the defendant. On January 3, 2006, the plaintiff filed a statement with the police, claiming that the defendant went to her place of employment and also made telephone calls to her parents and to her place of employment. On June 3, 2006, a witness observed the defendant at the plaintiff's residence. A complaint filed on June 6, 2006, alleged that the defendant drove by the plaintiff's residence seven times. The defendant was subsequently convicted of violating the protective order. On August 30, 2006, the district court extended the order for one year. There is no evidence that the defendant violated the protective

order during that year. On August 28, 2007, the plaintiff requested, and the trial court granted, a five-year extension. The defendant requested a hearing. *See* RSA 633:3-a, III-c.

At the hearing, the defendant represented, and the plaintiff did not dispute, that he had complied with the protective order since June 2006. The plaintiff informed the trial court that she requested an extension because the defendant had violated the prior orders.

The trial court issued a written order, granting the plaintiff's request for a five-year extension, stating: "An important factor in the Court finding plaintiff is entitled to have the order extended is that the defendant did previously on June 5, 2006 violate a previous order then in effect, [d]efendant's claim he has not contacted plaintiff in over a year is not a reason to deny [p]laintiff 's request or her fear of defendant."

On appeal, the defendant raises four issues: (1) whether the plaintiff submitted sufficient evidence of "good cause" to support the extension; (2) whether an incident that occurred fifteen months prior to the plaintiff's request for extension is sufficient to satisfy the "good cause" standard; (3) whether the district court unsustainably exercised its discretion in granting the extension; and (4) whether RSA 633:3-a, III-c is void for vagueness as it relates to the phrase "good cause," and therefore violates the defendant's due process rights.

The defendant's arguments as to sufficiency of the evidence are intertwined with questions of statutory interpretation regarding the "good cause" standard in RSA 633:3-a, III-c. Specifically, the defendant points out that it is undisputed that he has complied with the protective order since June 2006, and argues that violation of a protective order fifteen months prior to a request for an extension is insufficient as a matter of law to meet the standard of "good cause." We, therefore, begin our analysis with a discussion of RSA 633:3-a, III-c.

RSA 633:3-a, III-c provides:

> Any order under this section shall be for a fixed period of time not to exceed one year, but may be extended by order of the court upon a motion by the plaintiff, *showing good cause*, with notice to the defendant, for one year after the expiration of the first order and thereafter each extension may be for up to 5 years, upon the request of the plaintiff and at the discretion of the court. The court shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff.

(Emphasis added.)

Interpretation of a statute is a question of law, which we review *de novo*. *Upton v. Town of Hopkinton*, 157 N.H. 115, 118 (2008). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Fisher v. Minichiello*, 155 N.H. 188, 191 (2007). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections. *Appeal of N.H. Troopers Assoc.*, 145 N.H. 288, 290 (2000).

Initially, we discuss the meaning of "good cause." RSA 633:3-a, III-c permits the court to extend a final protective order initially for one year. Thereafter "each extension may be for up to 5 years" upon a showing of "good cause." RSA 633:3-a, III-c. RSA 633:3-a does not define "good cause." *But see In re Alexander Grant & Co.*, 820 F.2d 352, 356 (11th Cir. 1987) (good cause is "difficult to define in absolute terms, [but] it generally signifies a sound basis or legitimate need to take judicial action"). It is, however, a common legal term. *E.g.*, FED. R. CIV. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); RSA 12-E:5, II (2003) ("When a petition for a hearing has been made, and good cause has been shown therefor, the commissioner shall set a time and place for a hearing."); RSA 29:12, I (2000) (abatement of interest on taxes where good cause shown); RSA 30-B:21 (2000) (transfer to another department of corrections where good cause shown); *Curras v. Unemployment Appeals Com'n*, 841 So. 2d 673, 674 (Fla. Dist. Ct. App. 2003) (to receive unemployment compensation one must show good cause to quit); *7-Eleven, Inc. v. Dar*, 757 N.E.2d 515, 522 (Ill. App. Ct. 2001) ("Termination of a franchise must be supported by good cause.").

The defendant points to RSA 633:3-a, III-a, which references RSA chapter 173-B, and argues that we should apply the principles articulated in *Tosta v. Bullis*, 156 N.H. 763 (2008), in construing the term "good cause." *See* RSA 633:3-a, III-a (remedy for stalking petitions look to domestic violence petition remedy); RSA ch. 173-B (2002 & Supp. 2007) (domestic violence petitions). In *Tosta*, we reiterated that "we have required that the threshold misconduct prompting a domestic violence petition be neither 'too distant in time' nor 'non-specific.'" *Tosta*, 156 N.H. at 767 (quoting *Fillmore v. Fillmore*, 147 N.H. 283, 286 (2001)). Although we agree with the defendant that the trial court should consider these factors, we disagree that they are the only factors that define "good cause" within RSA 633:3-a, III-c. Furthermore, unlike in *Tosta*, where the misconduct occurred nine months prior and the plaintiff chose to stay with the defendant following

the misconduct, *see Tosta*, 156 N.H. at 768, the plaintiff here has refrained from intentional contact with the defendant. The link between the abuse and the petition in *Tosta* was "attenuated at best." *Id.* Here, the defendant's past acts of violating the court order are the reason for the extension. Thus, any analogy to *Tosta* is misplaced.

■ We interpret "good cause" in context by considering the statute as a whole. RSA 633:3-a, III-a provides that "[a] person who has been the victim of stalking as defined in this section may seek relief by filing a civil petition," and "the court shall grant such relief as is necessary to bring about a cessation of stalking." *See* RSA 173-B:5, I(a) (Supp. 2007) (providing procedures for protective orders). The initial objective is to ensure the stalking ends. In addressing any extension, RSA 633:3-a, III-c provides that the court may extend the protective order on a "showing [of] good cause . . . to provide for the safety and well-being of the plaintiff." Thus, whether "good cause" exists directly relates to the safety and well-being of the plaintiff. For a showing of "good cause," the trial court must therefore assess whether the current conditions are such that there is still a concern for the safety and well-being of the plaintiff. To do so, the trial court must review the circumstances of the original stalking and any violation of the order. The trial court should also take into account any present and reasonable fear by the plaintiff. Where the trial court determines that the circumstances are such that, without a protective order, the plaintiff's safety and well-being would be in jeopardy, "good cause" warrants an extension.

We next address whether the trial court's finding was based upon sufficient evidence. The defendant makes two claims: (1) as a matter of law there was insufficient evidence because he had not violated the protective order during the one-year extension; and (2) on these particular facts, his behavior for the previous fifteen months did not warrant an extension. We reject both arguments.

On appeal, we review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law. *Fisher*, 155 N.H. at 190. We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. *Id.*

■ As to the defendant's argument that there was insufficient evidence as a matter of law, the defendant's compliance with the order over the previous fifteen months does not bar an extension. If we adopted the defendant's interpretation, any acts amounting to stalking, *see* RSA 633:3-a, II, regardless of how severe, would result in a protective order "not to exceed one year," RSA 633:3-a, III-c, provided the defendant did not

violate the order. This interpretation is flawed. If the legislature intended to allow for an extension only when there was a violation of the prior order, the legislature would have included that restriction in the statute. *See Fisher*, 155 N.H. at 191. It did not. Thus, the defendant's compliance with or violation of the protective order is a factor for the trial court to consider.

As to the trial court's specific findings in this case, the trial court based its decision to extend the order primarily upon the defendant's June 5, 2006 violation of the previous order. At the hearing, the trial court heard that in June 2006, while the original protective order was in place, the defendant "drove by [the plaintiff's house] a dozen times." The defendant "subsequently was arrested and went to jail." At the hearing, the plaintiff stated, "I do have affidavits from the witnesses in the neighborhood that saw him during that time period in the silver car." The plaintiff explained to the court, "I am not feeling with Mr. Weiner's previous history that without the extension I can move forward. I'm asking that I can be made to feel safe and not sorry." Based upon this evidence, the trial court could have reasonably found good cause to extend the protective order.

■ The trial court is in the best position to view the current circumstances, as well as the defendant's prior acts, and determine whether an extension is necessary for the safety and well-being of the plaintiff. Thus, the trial court has discretion to extend a protective order. *See* RSA 633:3-a, III-c. We caution, however, that this discretion is not without limitation. We regard this as a close case. Nonetheless, there is sufficient evidence in the record to support the finding that the defendant's actions in driving by the plaintiff's residence multiple times in violation of the protective order only fifteen months earlier, together with the plaintiff's reasonable fear, constituted good cause.

Finally, we address the defendant's argument that the term "good cause" is impermissibly vague and violates his procedural due process rights. The defendant does not specifically invoke a provision of the State Constitution in his brief, and therefore fails to preserve a state constitutional claim. *See State v. Hancock*, 156 N.H. 301, 305 (2007). We therefore limit our analysis to the Federal Constitution.

■■ "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "A party challenging a statute as void for vagueness bears a heavy burden of proof in view of the strong presumption favoring a statute's constitutionality." *State v. MacElman*, 154 N.H. 304, 307 (2006).

The defendant argues that "[t]he term 'Good Cause' should give a [d]efendant some articulable level of conduct which, if refrained from, would result in the ultimate end to the extensions . . . ." He maintains that "there have been no incidents between the plaintiff and the defendant for a period of fifteen months, a reasonable person of ordinary intelligence would neither believe, nor understand, 'Good Cause' could exist to the extent that an order could be extended for an additional period of five years." He further argues that it is unclear if the showing of good cause "can, or should, relate back to the original precipitating event that gave rise to the initial order, or if 'Good Cause' should only relate to events that took place from and after the last extension of the current order." Although he does not clarify whether his challenges to RSA 633:3-a, III-c are facial or as-applied, we interpret his arguments to be both.

RSA 633:3-a, III-c sets forth what the trial court must consider in determining if "good cause" exists. "The court shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff." RSA 633:3-a, III-c. Such relief may include an extension of the order "for up to 5 years." RSA 633:3-a, III-c.

 Accordingly, we find that RSA 633:3-a provides notice to a person of ordinary intelligence that, in addressing whether there is "good cause" for an extension, the court will take into account the original act and any subsequent acts. RSA 633:3-a further provides notice to a person of ordinary intelligence that if the court finds "good cause" for the extension, the extension may be for five years. The defendant knew or should have known that if he participated in activity that constituted stalking or violated conditions of the original stalking order, the court could issue an extended protective order. As to the defendant's concern that the statute does not provide guidelines for a defendant to know the actions which will result in a five-year extension, we will not find a statute unconstitutionally vague simply because it does not precisely apprise an individual of the standards by which the decision will be made. See Derry Sand & Gravel, Inc. v. Town of Londonderry, 121 N.H. 501, 505 (1981). Accordingly, we reject the defendant's arguments that "good cause" within RSA 633:3-a, III-c is vague either on its face or as applied to the defendant.

Furthermore, we note that "[c]ourts have rejected arguments that ['good cause'] renders a statutory provision vague." State v. Miller, 964 So. 2d 911, 921 (La. 2007) (citing Wray v. Folsom, 166 F. Supp. 390 (W.D. Ark. 1958)); see Derry Sand & Gravel, Inc., 121 N.H. at 505 ("This court has long recognized that ['good cause and sufficient reason'] provide adequate criteria to guide a governmental body . . . in the exercise of its discretion.").

Accordingly, for the foregoing reasons, we uphold the trial court's decision to grant the extension.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.