Sullivan
No. 2008-858

## Land America Commonwealth Title Insurance Company

### v.

### Dorothy Kolozetski

Argued: September 23, 2009
Opinion Issued: January 29, 2010

*McSwiney, Semple, Hankin-Birke & Wood, P.C.*, of New London (*Susan Hankin-Birke* on the brief and orally), for the plaintiff.

*Melanie Bell*, of Newbury, on the brief and orally, for the defendant.

HICKS, J. The defendant, Dorothy Kolozetski, appeals the Trial Court's (*Arnold*, J.) order applying RSA 477:22 (2001) to award the proceeds of her husband's one-half interest in the marital residence to Land America Commonwealth Title Insurance Company (Land America). We affirm.

The following facts were either found by the trial court or are supported by the record. Dorothy and John Kolozetski owned real property in Newport as joint tenants with rights of survivorship. They mortgaged their homestead to Sugar River Bank (Sugar River). In 2005, Dorothy Kolozetski filed for divorce, whereupon the Newport Family Division issued a non-hypothecation order. A non-hypothecation order, with limited exceptions, enjoins any party from "transferring, encumbering, hypothecating, concealing or in any way disposing of any property" until the divorce decree has been executed. RSA 458:16-b, I (2004). During the divorce proceedings, John Kolozetski forged his wife's signature on a notarized power of attorney. With this fraudulent power of attorney, he obtained a loan of $150,000 from Lake Sunapee Bank (Lake Sunapee) secured by a mortgage on the property. Lake Sunapee paid Sugar River $50,554.25 to satisfy the first mortgage and advanced the remaining balance to John Kolozetski.

With these funds, he purchased a hot tub and two luxury vehicles, among other items. Based upon these actions, the family division found him in contempt of the court's non-hypothecation order. Lake Sunapee intervened in the Kolozetskis' divorce proceedings. John Kolozetski has not repaid the Lake Sunapee mortgage.

In 2007, the Kolozetskis divorced. In the final decree of divorce, the family division noted that the property would be sold by agreement between Dorothy Kolozetski and Lake Sunapee. The final decree also stated the superior court would resolve the debtor-creditor issues between Dorothy Kolozetski and Lake Sunapee.

Subsequently, Lake Sunapee filed suit in superior court to recover the money it loaned. As a part of this action, Lake Sunapee filed a motion to liquidate the real estate. In lieu of a forced sale, Dorothy Kolozetski and Lake Sunapee agreed that she would convey the real property to a third party and release her homestead rights. The real property sold for $225,000. The superior court ordered that after taxes, fees, and other liens, $50,554.26 be distributed to Lake Sunapee to offset its satisfaction of the Sugar River loan and that $74,865.81 be given to Dorothy Kolozetski. The remaining $74,865.80 was placed in an escrow account pending the outcome of this litigation. Both Lake Sunapee and Dorothy Kolozetski claim the full amount of the proceeds in the account. During these proceedings, Land America, a title insurance company that provided coverage to Lake Sunapee, substituted itself for Lake Sunapee.

The trial court found that Land America should receive the money in the escrow account. It reasoned that John Kolozetski had effected a conveyance to Lake Sunapee by mortgaging the property for $150,000. While he could not legally convey the entire property without his wife's participation as joint tenant, the court ruled that "RSA 477:22 act[ed] to save the conveyance to the extent of Mr. Kolozetski's interest in the property at the time he executed the mortgage." The trial court found John Kolozetski had a one-half interest in the property to which Land America was entitled.

On appeal, Dorothy Kolozetski contends that the trial court erred in applying RSA 477:22 to award Land America one-half of the net proceeds. Her argument requires us to construe RSA 477:22. The interpretation of a statute is a question of law, which we review *de novo*. *MacPherson v. Weiner*, 158 N.H. 6, 9 (2008). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections. *Id.*

■ RSA 477:22 provides, "A conveyance made by a person having a limited interest in an estate, purporting to convey a greater interest than he possessed or could lawfully convey, shall not work a forfeiture thereof, but shall pass to the grantee all the estate which he could lawfully convey." A plain reading of RSA 477:22 indicates that the statute provides protection to the grantee when a person purports "to convey a greater interest than he possessed or could lawfully convey." RSA 477:22. Here, we conclude John Kolozetski did just that when he presented the forged notarized power of attorney to acquire the mortgage.

■ To determine whether John Kolozetski purported to convey "a greater interest than he possessed or could lawfully convey," we first must establish what he could "lawfully convey." As a joint tenant, John Kolozetski had the power to secure a loan with a mortgage only on his undivided one-half interest in the property without the other tenant's consent or knowledge. *See Johnson v. Ben. Finance Co. of Ill., Inc.*, 506 N.E.2d 1025, 1026-28 (Ill. App. Ct. 1987) (holding bank had a valid mortgage lien only against husband's one-half interest in the property where husband forged wife's signature on a quitclaim deed to obtain a second mortgage). John Kolozetski, however, could not encumber his wife's property interest with a mortgage without her consent, which he did not have. *See, e.g., Taylor v. Canterbury*, 92 P.3d 961, 965 (Colo. 2004); *First Nat. Bank v. Energy Fuels Corp.*, 618 P.2d 1115, 1118 (Colo. 1980) ("A joint tenant cannot alienate, encumber, or transfer the interest of other joint tenants without their consent.").

■■ Further, by applying for the Lake Sunapee mortgage without his wife's consent, John Kolozetski unilaterally severed the joint tenancy, resulting in a tenancy in common. His actions expressed a clear intent to terminate the joint tenancy's right of survivorship. *Mamalis v. Bornovas*, 112 N.H. 423, 426 (1972) (requiring a joint tenant's actions to display a clear intent to sever). Indeed, in a mortgage title theory state, such as New Hampshire, other courts have found encumbering the property with a mortgage to which the other joint tenant does not agree severs the tenancy. *See, e.g., Schaefer v. Peoples Heritage Sav. Bank*, 669 A.2d 185, 187 (Me. 1996); 20 AM. JUR. 2D *Cotenancy and Joint Ownership* § 27 (2005); 7 R. POWELL, POWELL ON REAL PROPERTY § 51.04[1][c] (M. Wolf ed. 2009). The severance occurs because a mortgage in theory is a conditional conveyance that passes legal title to the property in fee to the mortgagee; the mortgagor, however, retains equitable title. *Bradley v. Lightcap*, 195 U.S. 1, 17-18 (1904); 54A AM. JUR. 2D *Mortgages* § 136 (2009). Therefore, John Kolozetski could only convey title to his one-half undivided interest in the tenancy in common.

■ We next must determine what John Kolozetski purported to convey. To obtain the Lake Sunapee mortgage loan, John Kolozetski presented the bank with a notarized forged power of attorney appointing him as his wife's "attorney, with full power of substitution and revocation, for [her] and in [her] name, place and stead." This fraudulent power of attorney signified that John Kolozetski possessed his wife's permission to give a mortgage on their entire property held as joint tenants, not just his undivided one-half share of the tenancy. Therefore, John Kolozetski, a joint tenant or a person with "a limited interest in an estate," purported to "convey a greater interest than he possessed or could lawfully convey."

■ Pursuant to RSA 477:22, the grantee receives all of the estate that the grantor "could lawfully convey." Here, John Kolozetski could lawfully convey only his undivided one-half interest in the property. This one-half interest equals one-half of the proceeds from the sale of the house after satisfaction of the underlying loan — the contested $74,865.80 held in escrow that the superior court awarded to Land America. The parties had agreed that the first $50,554.26 from the sale of the house would satisfy the underlying loan. Therefore, in light of this agreement, we decline to remand this case for reconsideration of the underlying subrogation claim.

■ In addition to arguing generally that RSA 477:22 does not apply, Dorothy Kolozetski presents a number of specific reasons why the statute does not apply, which we will now address. The first is that John Kolozetski lacked a "lawful interest" or a "lawfully conveyable interest" because the family court had issued a non-hypothecation order and had not determined the relative interests of the parties at the time he acquired the second mortgage. This argument fails. A violation of a non-hypothecation order constitutes contempt of court punishable by imprisonment, a fine, and/or attorney's fees. *Cf. Duval v. Duval*, 114 N.H. 422, 425 (1974) (defining civil and criminal contempt actions); *see also* RSA 458:51 (2004) (permitting court to award reasonable costs and attorney's fees for failure to obey order or decree under RSA chapter 458). Indeed, here the marital court held John Kolozetski in contempt and ordered him to deliver possession and control to Dorothy Kolozetski of the identified items that he purchased with the proceeds from the mortgage. The fact that John Kolozetski violated the non-hypothecation order, however, does not mean that he did not possess a "lawful interest" or a "lawfully conveyable interest."

■ Second, Dorothy Kolozetski contends that a forged mortgage and forged power of attorney cannot validly convey title and divest her of her rights to the property, particularly her homestead right. To make this argument, she relies upon a number of inapposite cases from other

jurisdictions. *See Southeast Bank, N.A. v. Sapp,* 554 So. 2d 1193 (Fla. Dist. Ct. App. 1989), *review denied,* 564 So. 2d 1087 (Fla. 1990); *Fitzgerald, Trustee v. Goff,* 99 Ind. 28 (1884); *Howell v. McCrie,* 14 P. 257 (Kan. 1887); *David City Building & Loan Ass'n v. Fast,* 208 N.W. 964 (Neb. 1926). Here, however, Dorothy Kolozetski was not divested of her one-half interest in the property. John Kolozetski encumbered and passed title only to his one-half interest in the marital property when he obtained the mortgage loan. He could not convey her interest.

Third, Dorothy Kolozetski argues that public policy dictates that a bank should not be rewarded for its "fail[ure] to exercise due diligence" when refinancing the marital home at the expense of the innocent spouse. Based upon the record before us, Dorothy Kolozetski did not make this argument to the trial court or in her notice of appeal; therefore, we decline to address it. *See Bean v. Red Oak Prop. Mgmt.,* 151 N.H. 248, 250 (2004).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.