Rockingham
No. 2009-335

MANCHESTER WATER WORKS

v.

TOWN OF AUBURN

Argued: January 21, 2010
Opinion Issued: May 20, 2010

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris & a.* on the brief, and *Mr. Harris* orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Andover, Massachusetts (*George R. Moore* and *Stephanie E. Zywien* on the brief, and *Mr. Moore* orally), for the respondent.

HICKS, J. The petitioner, Manchester Water Works (Water Works), appeals an order of the Superior Court (*Lewis*, J.) granting the motion to dismiss its petition for a tax abatement filed by the respondent, the Town of Auburn. The Water Works petitioned for an abatement pursuant to RSA 76:17 (2003) because its assessment did not contain a reduction for a conservation easement placed on its property. We affirm.

The following facts appear in the trial court's order. The Water Works, a subdivision of the City of Manchester that provides drinking water for the city, owns real property along Lake Massabesic and its watershed within the Town of Auburn. Lake Massabesic is the primary source of

Manchester's drinking water. Both parties agree that RSA 72:11 (2003) governs the taxation of the flood control property in dispute here.

■ RSA 72:11 exempts from taxation land owned by a municipality for "the purpose of a water supply or flood control," but requires that the public entity make annual payments in lieu of taxes to the city or town where the property lies. RSA 72:11; *see Manchester v. Auburn*, 102 N.H. 325, 329 (1959) (stating that RSA 72:11 "was plainly intended to take water supply property out of the realm of taxation, and impose a charge in the nature of a charge for special benefit, or a condition upon the grant of a power"). Specifically, RSA 72:11 states in pertinent part:

> Property held by a city, town or district in another city or town for the purpose of a water supply or flood control, if yielding no rent, shall not be liable to taxation therein, but the city, town or district so holding it shall annually pay to the city or town in which such property lies an amount equal to that which such place would receive for taxes upon the average of the assessed value of such land, without buildings or other structures, for the 3 years last preceding legal process to acquire the same, or other acquisition thereof, the valuation for each year being reduced by all abatements thereon . . . such payments shall be made on or before December 1 in each year; provided, however, that after such acquisition the valuation thus established shall be subject to change, as to make such value proportional with the assessed value of other property in the town which is subject to taxation, so that such payment will not exceed its proportion of the public charge in that year.

RSA 72:11. Accordingly, the Water Works must make payments based upon the assessed value of the property minus any abatements. RSA 72:11; *City of Manchester v. Town of Auburn*, 125 N.H. 147, 153 (1984) (*Manchester II*). Auburn also must assess the value of the subject property in the same manner that it assesses the "full and true" value of any other parcel of real estate. *Manchester II*, 125 N.H. at 153 (noting that RSA 72:11 requires that "water supply land be valued in accordance with the same principles as are used in assessing the full and true value of any other parcel of property"). The Water Works has the same right of appeal as any other taxpayer. *See* RSA 72:11.

In March 2007, the Water Works granted a conservation easement to the Society for the Protection of New Hampshire Forests on a 460-acre parcel of its property. The easement provides for a permanent transfer of development rights to the Forest Society, subject to a right to terminate on thirty years' notice. Concurrently, the Water Works entered into an option

agreement in favor of the Forest Society. This option agreement provides that the easement's purpose is "to provide long-term protection of such land against development," thereby protecting Manchester's water supply. Auburn, however, contends the purpose of the easement is to reduce the Water Works' tax burden.

In November 2007, Auburn sent the Water Works a notice of payment in lieu of taxes pursuant to RSA 72:11. Auburn arrived at the demanded payment by using a rate of $13.71 per $1,000.00 of the assessed value of the property as undeveloped lakefront property — the highest and best use of the property. This is the same method Auburn uses for any tax appraisal. Auburn did not account for the Water Works' easement to the Forest Society in determining the assessed value of the property.

In February 2008, the Water Works filed a timely abatement application citing the conservation easement. Auburn's board of selectman denied the application, and the Water Works made its payment under protest. Subsequently, the Water Works filed a petition for abatement in superior court, arguing that the assessed valuation of the property exceeded its just and proportionate valuation. In response, Auburn filed a motion to dismiss. The trial court granted the motion, finding that the easement was an impermanent, "self imposed" use restriction on real property "subject to termination or revocation." In other words, the easement did not comply with RSA chapters 79-A and 79-B, which govern the municipal taxation of conservation easements. The trial court, therefore, ruled that "Auburn acted within proper bounds in not considering the [e]asement in determining the value, for tax-related purposes, of the [p]roperty, and in arriving at its calculation of the due payment in lieu of taxes."

In reviewing a trial court's ruling on a motion to dismiss, we consider whether the allegations contained in the pleadings are reasonably susceptible of a construction that would permit recovery. *McNamara v. Hersh*, 157 N.H. 72, 73 (2008). We assume the petitioner's pleadings to be true and construe all reasonable inferences in the light most favorable to it. *Id.* We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *Id.*

The Water Works maintains that the trial court erred in finding the conservation easement "a nullity for tax valuation purposes." Specifically, the Water Works contends that the easement is a valid conservation restriction, and, therefore, the conservation easement should have been considered for tax valuation purposes under RSA 72:11. The easement did not have to meet the more restrictive definition of a "conservation restriction" under RSA 79-B:2 (2003) to be considered for tax purposes as the trial court found. Further, it was not "the type of self-imposed

restriction that is discounted in determining taxable value of property." (Bolding omitted.) Finally, the Water Works disagrees with the trial court's finding that "the legislature has evinced a definite unwillingness to permit a water works entity . . . to at all avail itself of the use of a 'conservation restriction' to reduce its payment in lieu of taxes."

The Water Works' arguments on appeal require us to construe various statutes. The interpretation of a statute is a question of law, which we review *de novo*. *MacPherson v. Weiner*, 158 N.H. 6, 9 (2008). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections. *Id.*

■ In assessing the "full and true" value of the property, *Manchester II*, 125 N.H. at 153, for purposes of RSA 72:11, the Water Works contends the trial court should have considered the Forest Society easement. We agree that the Forest Society easement appears to meet the statutory definition of a conservation restriction under RSA 477:45, I (2001). The Forest Society easement "prohibit[s] or require[s], a limitation upon . . . acts on or with respect to, or uses of, a land or water area," in order to maintain its "natural, scenic, or open condition . . . or in any other use or condition consistent with the protection of environmental quality." RSA 477:45, I; *see also* RSA 477:46 (2001), :47 (Supp. 2009). Nevertheless, that the easement may comply with RSA 477:45 does not mean that it must be considered in determining the taxable value of the property. RSA 477:45 does not address how a municipal conservation restriction should be assessed and valued. It defines a conservation restriction for purposes of conveyance and enforcement — not for purposes of taxation. As we have previously stated, "[t]itle is not the test of taxability." *Piper v. Meredith*, 83 N.H. 107, 109 (1927).

RSA chapter 79-B governs the municipal taxation of conservation easements. The stated intent of RSA chapter 79-B is "to provide for a fair, consistent and equitable method of municipal assessment of conservation restriction land which provides a demonstrated public benefit, based upon the conservation uses to which the land is perpetually limited," as well as "to further assist in the preservation of open space in this state in the public interest by promoting the granting and acquisition of permanent conservation restrictions on such open space land which provides a demonstrated public benefit." RSA 79-B:1 (2003).

■ ■ To further these two purposes, RSA chapter 79-B defines a conservation restriction more narrowly than does RSA 477:45. *Compare*

RSA 79-B:2, IV *with* RSA 477:45, I. To qualify for favorable tax treatment under chapter 79-B, a conservation restriction must be "a permanent restriction of open space land by deed granted in perpetuity, and further, as defined by RSA 477:45, I, . . . for the purposes of natural resource conservation . . . ." RSA 79-B:2, IV. Here, the Forest Society easement does not meet the definition of a conservation restriction under RSA 79-B:2, IV. It is not a "permanent restriction" on land "granted in perpetuity." *Id.* The easement is not perpetual and can be rescinded by the Water Works upon thirty years' notice.

Further, the property is not "open space land" as contemplated by RSA 79-B:2, VII. Open space land is "any or all farm land, forest land, or unproductive land" but "shall not include any property held by a city, town or district in another city or town for the purpose of a water supply or flood control, for which a payment in place of taxes is made in accordance with RSA 72:11." RSA 79-A:2, IX (2003); RSA 79-B:2, VII (defining open space land by reference to RSA 79-A:2). Here, the subject land was held specifically for the purpose of a water supply or flood control. *See* RSA 79-A:2, IX; *see also* RSA 79-B:2, VII. Therefore, based upon the plain language of the relevant statutes, the Forest Society easement is not a conservation restriction that qualifies for current use favorable tax treatment.

The Water Works contends that even if the conservation easement did not qualify for favorable current use tax treatment, it "must be considered" in valuing the property's fair market value. It affects the value of the property and is "not the type of self-imposed restriction that is discounted in determining the taxable value of property." In support of this argument, the Water Works cites *Manchester II*.

In *Manchester II*, as here, we examined whether Auburn had properly determined the value of the Water Works' lake front property for the purpose of RSA 72:11 payments. *Manchester II*, 125 N.H. 147. There, Auburn argued that activity restrictions imposed on Lake Massabesic, such as a swimming prohibition, should not be considered for tax valuation purposes. *Id.* at 157. Rather, the property should be assessed as lake front property with full use of the lake — a twenty-five percent increase in value. *Id.* According to Auburn, Lake Massabesic's activity restrictions were "self-imposed" restrictions. *Id.* These restrictions existed to ensure a clean water supply for the City of Manchester. *See id.* at 150, 158. In *Manchester II*, we rejected Auburn's argument and held that "[t]he restrictions against activities on the lake, whatever be their source, are not restrictions on the subject property itself." *Id.* at 158. They were restrictions on the use of the lake. *Id.* We reasoned that "[e]ven if [the Water Works] were to sell its property, it would not cease to use the lake as the primary source of potable

water, and the would-be buyer would take subject to said restrictions." *Id.* Lake Massabesic had supplied Manchester with water for over a hundred years. *See id.* at 150. Therefore, Auburn had to consider these activity restrictions in determining "the full and true value of the property." *Id.* at 158.

■■ By contrast, here, the Forest Society easement is a self-imposed restriction on the use of the subject property itself. The document creating the conservation easement prohibits "industrial or commercial activities [on the property], except agriculture and forestry, including [limited] timber harvesting," and prevents the construction of any dwellings on the property, among other restrictions. The fact that these restrictions are enforceable by the Forest Society does not mean they are not "self-imposed." We decline the Water Works' invitation to differentiate between self-imposed restrictions that "attach to the property itself and encumber it in the hands of successors" versus those that just place "limitations on value in the hands, or in the control, of the property owner." RSA chapter 79-B informs what type of tax treatment conservation restrictions will receive. *See* RSA ch. 79-B (2003). Indeed, as a self-imposed conservation restriction, the Forest Society easement must comply with RSA chapter 79-B requirements to receive favorable tax treatment. It would be against public policy to "allow property owners to effectively control the valuation of their properties for taxation purposes by careful imposition of limited restrictions in the deeds to their properties." *Hoover v. State Bd. of Equalization,* 579 S.W.2d 192, 196 (Tenn. Ct. App. 1978).

Finally, the Water Works argues that even if the easement is a self-imposed restriction, it should be considered for tax valuation reasons because the easement affects the value of the property. The Water Works cites *Waterville Estates Assoc. v. Town of Campton,* 122 N.H. 506 (1982), and *Locke Lake Colony Assoc. v. Town of Barnstead,* 126 N.H. 136 (1985), for this proposition. In *Waterville Estates* and *Locke Lake,* we examined whether a property association, which held title to common property within a real estate development, was entitled to a tax abatement because the property "was so encumbered with easements that it had no taxable value." *Locke Lake,* 126 N.H. at 142; *see also Waterville Estates,* 122 N.H. at 508. In both cases, we found that the common property, the servient property, was established for the benefit of the homeowners. *Locke Lake,* 126 N.H. at 142; *Waterville Estates,* 122 N.H. at 509-10. Each homeowner's deed included an "easement" entitling the owner to use of the common property. *See, e.g., Locke Lake,* 126 N.H. at 142. These interests were easements intended to run with the land and were not revocable at the will of the homeowner's association, the owner of the servient estate. *See, e.g., id.*

Therefore, we held the common property, the servient property, was subjected to so many easements that it had no taxable value and, thus, the property association was entitled to a tax abatement. *Id.*; *Waterville Estates*, 122 N.H. at 509-10. The value of these easements, however, could be added to the value of the estate of the dominant owners. *Locke Lake*, 126 N.H. at 141. We did not hold that an easement "must be considered in assessing the taxable value of a parcel" as the Water Works asserts. We also note that here the easement is distinct from the easements in *Waterville Estates* and *Locke Lake*. The Forest Society easement is revocable by the servient land owner, the Water Works, not the dominant owner, on thirty years notice. It is not perpetual. *See* RSA 79-B:2, IV.

Accordingly, we conclude that the trial court properly granted Auburn's motion to dismiss the Water Works' petition for an abatement of assessments.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.