NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

4th Circuit Court-Laconia District Division
No. 2022-0114

S.D.

v.

N.B.

Submitted: January 25, 2023
Opinion Issued: June 29, 2023

S.D., self-represented party, by brief.

N.B., self-represented party, by brief.

American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the joint memorandum of law) and American Civil Liberties Union Foundation, of New York, New York (Brian Hauss, Sandra S. Park, and Elizabeth Gyori, on the joint memorandum of law), as amici curiae.

Dana Albrecht, by brief, as amicus curiae.

New Hampshire Legal Assistance (Mary Krueger, of Claremont, on the brief), as amicus curiae.

Law Office of Joshua L. Gordon, of Concord (Joshua L. Gordon on the brief), for the New Hampshire Coalition Against Domestic and Sexual Violence, National Network to End Domestic Violence, National Alliance to End Sexual Violence, Battered Women's Justice Project, and Victim Rights Law Center, as amici curiae.

HICKS, J.  The defendant, N.B., appeals a final civil stalking protective order, see RSA 633:3-a (Supp. 2022), entered by the Circuit Court (Murray, J.) for the protection of the plaintiff, S.D.  The defendant argues that: (1) the evidence was insufficient to support a finding that he stalked the plaintiff; and (2) the court's protective order violates his right to free speech under the First Amendment to the Federal Constitution.  We affirm.

The following facts are set forth in the trial court's narrative order.  The plaintiff and the defendant have known each other since high school, but never had a personal relationship.  Sometime after high school, the defendant developed a fixation with the plaintiff.  The plaintiff testified that the defendant began to contact her via the internet sometime in 2017.  The defendant agreed that he had made postings regarding the plaintiff, but testified that they began in 2019.  The postings about the plaintiff included sexual suggestions and threats.

The trial court held a final hearing on the stalking petition on February 8, 2022, and found that the defendant had stalked the plaintiff.  In so ruling, the trial court found that the defendant had: (1) posted comments concerning the plaintiff on internet websites, including comments about watching the plaintiff and being sexually aroused, and desiring that the plaintiff be "gang banged, raped or shot"; (2) "created animated models resembling [the plaintiff] and posted them at various sites . . . including Twitter, Instagram, and a 'Deviant Art' website" using software the defendant had purchased to create the models; (3) identified some of the models with plaintiff's name, including a model of an adult naked woman; (4) posted a model depicting the plaintiff "being stabbed in the breast by another woman"; (5) posted a model depicting the plaintiff "being choked by a police officer"; (6) created a profile on a dating website using the plaintiff's name and uploaded models resembling the plaintiff to that profile; and (7) posted "actual pictures" of the plaintiff that the defendant had obtained from the plaintiff's social media pages.  The final order, in effect from February 10, 2022 to February 9, 2023, included a number of standard protective orders, and also stated:

> Defendant shall not mention Plaintiff on any social media and shall not post any images of Plaintiff including pictures of models represented to be Plaintiff. Defendant shall immediately make best efforts to remove Plaintiff's name and/or image from any social media or internet posting he has made or maintained.
>
> . . . .
>
> Defendant shall not post Plaintiff's name or any photograph or representation of her on the internet.

The defendant timely appealed. We solicited amicus briefs or memoranda from interested persons on whether the above-quoted restraining order provisions, under the circumstances of this case, violate the defendant's right to free speech.

We note that the protective order remained in effect until February 9, 2023, which date has now passed. We have not been notified whether the order of protection was extended for another year or has expired without renewal. Nevertheless, the appeal is not moot, even if the order of protection is no longer in effect. See State v. Luwal, 175 N.H. 467, 470 (2022) (Mootness "is not subject to rigid rules, but is a matter of convenience and discretion. A case may not be moot if it presents legal issues that are of pressing public interest and are capable of repetition yet evading review." (quotation and citation omitted)). This appeal presents a question of pressing public interest, that is, the extent to which the First Amendment places limits on the scope of a protective order restricting a defendant's online activity.

Before turning to the constitutional question, we address the defendant's argument that the evidence was insufficient to support a finding that he had stalked the plaintiff. We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or are erroneous as a matter of law. See Fisher v. Minichiello, 155 N.H. 188, 190 (2007). Determining whether the trial court's findings are supported by the evidence requires a review of the transcript, and it is the burden of the appealing party, here the defendant, to provide this court with a record sufficient to decide his issues on appeal. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004); see also Sup. Ct. R. 15(3) ("If the moving party intends to argue in the supreme court that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the moving party shall include in the record a transcript of all evidence relevant to such finding or conclusion."). The defendant did not provide a transcript of the final hearing on the stalking petition. Absent a transcript, we must assume that the evidence was sufficient to support the trial court's determination that the defendant stalked the plaintiff. See Bean, 151 N.H. at 250.

3

We now consider whether the above-quoted restraining order provisions, under the circumstances of this case, violate the defendant's rights under the First Amendment to the United States Constitution. We review questions of constitutional law de novo. City of Keene v. Cleaveland, 167 N.H. 731, 737 (2015). We begin by reviewing the law that governs the issuance of civil stalking protective orders in New Hampshire, then consider the principles that govern regulations of free speech, and then apply those principles to the provisions of the civil stalking order.

The legislature enacted RSA 633:3-a, which is contained in the New Hampshire Criminal Code, to protect individuals from "domestic violence and problems of like gravity, such as threatening strangers and obsessive former lovers and in recognition of the fact that harassing and threatening behaviors toward innocent people is a serious problem." State v. Craig, 167 N.H. 361, 376 (2015) (quotations and brackets omitted). RSA 633:3-a provides that a person who has been the victim of stalking may file a civil petition in the district division of the circuit court where either he or she or the defendant resides, seeking relief available under RSA chapter 173-B, including a protective order. See Fisher, 155 N.H. at 190; RSA 633:3-a, III-a; RSA 173-B:4, :5 (2022).

To obtain the relief requested, the plaintiff must prove "stalking" by a preponderance of the evidence. RSA 633:3-a, III-a. RSA 633:3-a, I, provides, in relevant part, that a "person commits the offense of stalking" if he or she:

  (a) Purposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear; [or]

  (b) Purposely or knowingly engages in a course of conduct targeted at a specific individual, which the actor knows will place that individual in fear for his or her personal safety or the safety of a member of that individual's immediate family . . . .

The statute defines "course of conduct" as "2 or more acts over a period of time . . . which evidences a continuity of purpose," and states that it may include, but is not limited to, any of the following acts or some combination of the following acts:

  (1) Threatening the safety of the targeted person or an immediate family member.

  (2) Following, approaching, or confronting that person, or a member of that person's immediate family.

4

(3) Appearing in close proximity to, or entering the person's residence, place of employment, school, or other place where the person can be found, or the residence, place of employment or school of a member of that person's immediate family.

(4) Causing damage to the person's residence or property or that of a member of the person's immediate family.

(5) Placing an object on the person's property, either directly or through a third person, or that of an immediate family member.

(6) Causing injury to that person's pet, or to a pet belonging to a member of that person's immediate family.

(7) Any act of communication, as defined in RSA 644:4, II.

RSA 633:3-a. RSA 644:4, II defines "communicates" as follows:

> to impart a message by any method of transmission, including but not limited to telephoning or personally delivering or sending or having delivered any information or material by written or printed note or letter, package, mail, courier service or electronic transmission, including electronic transmissions generated or communicated via a computer. For purposes of this section, "computer" means a programmable, electronic device capable of accepting and processing data.

RSA 644:4, II (Supp. 2022). The stalking statute states that, "[u]pon a showing of stalking by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of stalking," and provides that the "types of relief that may be granted . . . shall be the same as those set forth in RSA 173-B." RSA 633:3-a, III-a. RSA 173-B:5 identifies the relief that may be granted to a plaintiff upon a showing of abuse, and includes, among other things, as relevant in this case, the issuance of a restraining order directing the defendant to not abuse the plaintiff, to not have contact with the plaintiff, to not enter the premises where the plaintiff resides, and to not enter the plaintiff's school or the plaintiff's place of employment. RSA 173-B:5, I(a)(1), (2), (3) (2022). The list provided in RSA 173-B:5, while lengthy, is not exhaustive. See RSA 173-B:5. Accordingly, the form order issued by the circuit court in civil stalking cases, in addition to listing the forms of relief identified in the statute, also provides the trial court with the option to issue "[o]ther protective orders." As we have noted, at issue in this appeal is whether the trial court's "[o]ther protective orders" restricting certain online activity violate the defendant's right to free speech.

5

The First Amendment to the United States Constitution prohibits the passage of laws "abridging the freedom of speech." U.S. CONST. amend I. It applies to the states through the Fourteenth Amendment to the United States Constitution. Lovell v. Griffin, 303 U.S. 444, 450 (1938). It affords "special protection against orders that prohibit the publication or broadcast of particular information or commentary—that impose a 'previous' or 'prior' restraint on speech." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 556 (1976). "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." Alexander v. United States, 509 U.S. 544, 550 (1993). "Courts and commentators define prior restraint as a judicial order or administrative system that restricts speech, rather than merely punishing it after the fact." Mortgage Specialists v. Implode-Explode Heavy Indus., 160 N.H. 227, 240 (2010). Because prior restraints have the "immediate and irreversible sanction" of freezing speech for a period of time, "any prior restraint on expression comes with a heavy presumption against its constitutional validity." Id. at 42 (quotations, brackets, and ellipsis omitted).

The United States Supreme Court has stated that "above all else, the First Amendment means that government has no power to restrict expression because of its messages, its ideas, its subject matter, or its content." Police Department of Chicago v. Mosley, 408 U.S. 92, 95 (1972). Therefore, a content-based restriction, that is, a governmental regulation of speech based on the topic discussed or the idea or message conveyed, is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve [a] compelling state interest[]." Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015). A content-neutral restriction on speech faces a less stringent test, and is constitutional if it "is narrowly tailored to serve a significant governmental interest." Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989).

While a content-based restriction is presumptively unconstitutional, it has also long been "well understood that the right of free speech is not absolute at all times and under all circumstances." Chaplinsky v. New Hampshire, 315 U.S. 568, 571 (1942). There are certain "utterances [that] are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky, 315 U.S. at 572. Accordingly, there are certain categories of speech "the prevention and punishment of which have never been thought to raise any Constitutional problem." Id. at 571-72. Those categories of speech include "advocacy intended, and likely to, incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called 'fighting words'; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent." United States v. Alvarez, 567 U.S. 709, 717 (2012) (plurality opinion) (citations omitted).

We understand the defendant to argue that his First Amendment rights would be violated by any restraint being placed on his ability to make postings on the internet. The defendant states in his brief that he informed the trial court that he "didn't care if [he] ever had contact with [S.D.] ever again for the rest of [his] life, as [he has] no business talking to her or going anywhere near her," and that he "didn't care if [the court] granted a normal restraining order (the kind that's used to actually protect people)." As we have noted, however, the right of free speech is not absolute, and one type of permissible content-based restriction on speech is the restriction on "true threats." Id.; People v. Counterman, 497 P.3d 1039 (Colo. App. 2021), cert. granted, 143 S. Ct. 644 (U.S. Jan. 13, 2023) (No. 22-138) (argued April 19, 2023). "True threats" are "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003). The speaker need not intend to carry out the threat. Id. at 359-60. Rather, a prohibition on true threats "protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." Id. at 360 (quotations and brackets omitted). Another type of permissible content-based restriction is the restriction on speech integral to criminal conduct. Alvarez, 567 U.S. at 717 (plurality opinion).

The trial court found that the defendant had committed the offense of stalking by posting comments about watching the plaintiff and being sexually aroused, expressing a wish that the plaintiff would be "gang banged, raped or shot or he should do it since he knew where [she] lived," and creating nude models and animations of the plaintiff, some of which depicted her being violently assaulted. These were posted, according to the trial court order, "at various sites on the internet including Twitter, Instagram, and a 'Deviant Art' website." Some of the models were also posted at a dating site that included a profile represented to have been created by the plaintiff. We conclude that many of these postings "communicate a serious expression of an intent to commit an act of unlawful violence" toward the plaintiff and that a restriction on these postings would serve to protect the plaintiff from the fear of violence and the possibility that the threatened violence would occur. Virginia, 538 U.S. at 359. Other postings, such as the nude models and animations of the plaintiff, constitute speech integral to stalking, and are, therefore, not entitled to First Amendment protection. Cf. United States v. Osinger, 753 F.3d 939, 947 (9th Cir. 2014) (defendant's creation of Facebook account under a name similar to his ex-girlfriend's name, and his dissemination of sexually explicit photos depicting his ex-girlfriend "were not protected under the First Amendment because they were "integral to criminal conduct in intentionally harassing, intimidating or causing substantial emotional distress" to the ex-girlfriend (quotation omitted)). Accordingly, we agree with amici American Civil Liberties Union of New Hampshire Foundation and American Civil Liberties Union Foundation (amici ACLU) that a final protective order prohibiting the

defendant from posting the following would not violate the First Amendment: comments about watching the plaintiff and being sexually aroused; comments expressing the desire that the plaintiff would be raped or otherwise assaulted; animations, models or representations depicting the plaintiff in the nude, engaged in sexual activity, or being physically attacked; fake dating profiles featuring the plaintiff; or photographs of, representations of, or comments about the plaintiff that purposely, knowingly or recklessly cause the plaintiff to fear for her personal safety or the safety of an immediate family member.

This is not, however, the end of the inquiry regarding whether the protective order issued in this case violates the defendant's right to free speech under the First Amendment, because the order is not so limited. It also prohibits the defendant from posting the plaintiff's name or image anywhere on the internet.

Few state or federal appellate courts have addressed whether orders prohibiting a defendant, found to have stalked or abused someone, from posting that person's name or image anywhere on the internet violate the First Amendment. One state appellate court, in an appeal from a conviction of indirect criminal contempt of a prior protection from abuse order, held that a protective order prohibiting the defendant from "post[ing] any remark(s) and/or images regarding Plaintiff, on any social network(s), including but [not] limited to, Facebook, Myspace, Twitter, or any other electronic networks," was not an unconstitutional violation of free speech. Commonwealth v. Lambert, 147 A.3d 1221, 1223, 1229 (Pa. Super. Ct. 2016) (emphasis omitted). The court in Lambert concluded that the proscription in the protective order, because it was limited to electronic network remarks "regarding Plaintiff," was not concerned with the content of the defendant's speech, but, rather, the target of the speech. Id. at 1229. The court therefore applied intermediate scrutiny to the order and concluded that the order advanced an important governmental interest and was narrowly tailored to address that interest. Id. at 1228-29. An appellate court in California, without reference to what standard of scrutiny should apply, stated that, were the issue properly before it, the court would reject the appellant's First Amendment challenge to a domestic violence protection order ordering the appellant to "not post photographs, videos, or information about [the victim] to any internet site and to remove the same from any internet site over which he has access or control" because his "ability to continue to engage in activity that has been determined after a hearing to constitute abuse under the [Domestic Violence Prevention Act] is not the type of speech afforded constitutional protection." Phillips v. Campbell, 206 Cal. Rptr. 3d 492, 500 (Ct. App. 2016) (quotations and brackets omitted).

In Bey v. Rasawehr, however, the Ohio Supreme Court held that civil stalking protective orders, which ordered a man not to post about his mother and sister "on any social media service, website, discussion board or similar outlet or service" and to "remove all such postings from CountyCoverUp.com

8

that relate to [the mother and sister]," and ordered him to "refrain from posting about the deaths of [their] husbands in any manner that expresses, implies, or suggests that the [mother and sister] are culpable in those deaths," were subject to strict-scrutiny review and violated the First Amendment. Bey v. Rasawehr, 161 N.E.3d 529, 533, 546 (Ohio 2020) (involving allegations of political corruption). The court in Bey, after discussing Lambert, rejected the argument that the order banning all posted speech about the mother and sister was a content-neutral regulation. Id. at 539.

We need not decide today what level of scrutiny applies to orders prohibiting a defendant who has been found to have stalked or abused someone from posting that person's name or image anywhere on the internet because, given the facts of this case, we conclude that the order survives even strict scrutiny because it is narrowly tailored to serve a compelling state interest. See Reed, 576 U.S. at 163.

The compelling state interest at issue in this case is the protection of the plaintiff from abuse. As the language of the statute itself makes clear, RSA 633:3-a was enacted to protect innocent citizens from a course of conduct that would cause a reasonable person to fear for his or her personal safety, or the safety of a member of that person's immediate family. Pursuant to the statute, upon a finding of stalking, a trial court is to "grant such relief as is necessary to bring about a cessation of stalking." RSA 633:3-a, III-a. The objective is to ensure that the stalking ends. MacPherson v. Weiner, 158 N.H. 6, 10 (2008). Because the defendant has not provided this court with a copy of the transcript of the trial court hearing, we must conclude that the evidence supports a finding by the trial court that prohibiting the defendant from posting the plaintiff's name or image anywhere on the internet was necessary to bring about the cessation of stalking. In other words, we must conclude that the evidence presented to the trial court supports a finding that any comment by the defendant about the plaintiff on social media would constitute purposely, knowingly or recklessly engaging in conduct which would cause a reasonable person in the plaintiff's position to fear for her personal safety. Accordingly, we must conclude that a more narrowly tailored order would prove ineffective in protecting the plaintiff from abuse.

Amici ACLU characterize the trial court's final protection order as "sweeping," and asserts that it is "much more expansive than its findings," noting that the defendant would be prohibited from discussing the plaintiff's candidacy on social media were she to run for public office, and would be prevented from "mounting an effective response" were the plaintiff to defame him over social media. We disagree that the order is "expansive" or "sweeping." The trial court order does not prohibit the defendant from engaging in social media platforms and allows the defendant to participate in almost all online activity. Furthermore, the order does not prohibit the defendant from speaking about the plaintiff in any offline forum. The order at issue simply restrains the

9

defendant from continuing to stalk the plaintiff, including by using her name on any social media, for a period of one year. Under the circumstances of this case, we conclude that the order is narrowly tailored to serve a compelling governmental interest.

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.