NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court-Rochester District Division
No. 2015-0019


JEFFREY SMITH

v.

MILKO PESA d/b/a AUTO MILKO

Argued: November 10, 2015
Opinion Issued: January 26, 2016


Denitsa N. Pocheva-Smith, of Rochester, by brief and orally, for the plaintiff.


Lawson Persson & Weldon-Francke, PC, of Laconia (James P. Ball on the brief), and Haughey, Philpot & Laurent, P.A., of Laconia (William Philpot, Jr. orally), for the defendant.


BASSETT, J. The plaintiff, Jeffrey Smith, appeals an order of the Circuit Court (Ashley, J.) granting judgment to the defendant, Milko Pesa d/b/a Auto Milko, on the plaintiff's small claim action seeking damages and other relief on the grounds that he validly revoked acceptance of the used motor vehicle the defendant sold him and that, by selling him the vehicle, the defendant violated RSA chapter 358-F. See RSA ch. 358-F (2009). We affirm.

The relevant facts follow. In February 2014, the plaintiff purchased a 2004 Subaru from the defendant "as is as seen." Before purchasing it, he signed and/or initialed four documents. The first document is a receipt from the defendant's car dealership stating that the plaintiff purchased the motor vehicle "as is as seen," and containing statements in which the defendant, as the seller of the motor vehicle, disclaimed "**ALL WARRANTIES, EITHER EXPRESS OR IMPLIED**."

The second document is a notice stating:

**YOU ARE ABOUT TO PURCHASE A VEHICLE THAT MAY NOT PASS A NEW HAMPSHIRE VEHICLE INSPECTION.**

**'AUTO MILKO' INFORMS YOU THAT THIS VEHICLE IS BEING SOLD IN[ ]**
**"AS-IS" CONDITION AND THAT THE DEALERSHIP IS NOT RESPONSIBLE FOR ANY MECHANICAL PROBLEMS OR ANY OTHER MALFUNCTIONS TO THE VEHICLE AFTER YOU HAVE TAKEN DELIVERY.**

**PLEASE BE SURE THAT YOU ARE PREPARED TO PURCHASE THIS VEHICLE AND AGREE TO THE ABOVE CONDITION BEFORE SIGNING.**

The third document, a form from the New Hampshire Division of Motor Vehicles (DMV) titled "**NOTICE OF SALE OF UNSAFE MOTOR VEHICLE**," states, in pertinent part: "If you are considering the purchase of a used motor vehicle which may not pass a New Hampshire safety inspection, you have a right under RSA 358-F, to request that the dealer inspect the vehicle prior to sale and list the defects which must be corrected before an inspection sticker will be issued." The DMV form contains the following notice: "**The motor vehicle described herein will not pass a New Hampshire inspection and is unsafe for operation**." The form also contains a chart of possible deficiencies. The defendant wrote "unknown" across the fields in the chart. By signing the form, the plaintiff "acknowledge[d] that [he had] read the above statement and [had] been advised of [his] rights relative to the sale of unsafe motor vehicles." He also acknowledged that the motor vehicle "**will not pass a New Hampshire inspection, is unsafe for operation, and <u>cannot be driven on the ways of this state</u>.**" The plaintiff initialed his choice that a safety inspection not be conducted.

A fourth document, titled "BUYERS GUIDE," stated:

AS IS – NO WARRANTY

YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no

2

responsibility for any repairs regardless of any oral statements about the vehicle.

After purchasing the motor vehicle, the plaintiff had it inspected by a Subaru dealership, and the vehicle failed inspection. Thereafter, the parties agreed that the vehicle would be inspected by an independent mechanic. According to the plaintiff, the independent mechanic corroborated the opinion of the Subaru dealership that the vehicle was beyond repair. According to the defendant, the independent mechanic opined that the vehicle required only the replacement of a missing part. The plaintiff subsequently brought a small claim action against the defendant, seeking damages and rescission of the sale.

Following a hearing, the trial court ruled in favor of the defendant, stating that the plaintiff had "failed to sustain his burden of proof that defendant cause[d] him damage, particularly given the fact that plaintiff signed disclaimers." This appeal followed.

On appeal, the plaintiff argues that he presented sufficient evidence that he revoked his acceptance of the motor vehicle pursuant to RSA 382-A:2-608 (2011) and that the defendant violated RSA 358-F:2, :3. We review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. Achille v. Achille, 167 N.H. 706, 715 (2015). "When performing this review, we accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." Id. at 715-16 (quotation omitted). We view the evidence in the light most favorable to the prevailing party, here, the defendant. See id. at 716; see also In re Cyr, 873 A.2d 355, 360-61 (Me. 2005) (explaining that the appellate court's "inquiry in a challenge to the sufficiency of the evidence in a civil matter is whether 'by any reasonable view of the evidence, including inferences to be drawn therefrom, taken in the light most favorable to the prevailing party, the [judgment] can be sustained'").

Resolving the issues on appeal requires that we engage in statutory interpretation. "Statutory interpretation is a question of law, which we review de novo." Appeal of Local Gov't Ctr., 165 N.H. 790, 804 (2014). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id.

We begin with the plaintiff's argument that he revoked acceptance of the motor vehicle pursuant to RSA 382-A:2-608. RSA 382-A:2-608 is part of the Uniform Commercial Code. It provides, in pertinent part:

3

(1)  The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

    (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

    (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

RSA 382-A:2-608(1).  "Goods . . . are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract."  RSA 382-A:2-106(2) (2011).

The plaintiff's reliance upon RSA 382-A:2-608 is misplaced because here the motor vehicle <u>conformed</u> to the parties' contract.  The parties specifically contracted for a used motor vehicle that "will not pass a New Hampshire inspection, is unsafe for operation, and <u>cannot be driven on the ways of this state</u>." (Bolding omitted.)  Thus, when the motor vehicle failed inspection, it conformed to the parties' contract because its condition was "in accordance with the obligations under the contract," RSA 382-A:2-106(2) (2011), and its failure to pass inspection did not entitle the plaintiff to revoke his acceptance of the motor vehicle.

Although the plaintiff argues that this case is similar to <u>Woods v. Secord</u>, 122 N.H. 323 (1982), he is mistaken.  The plaintiff in <u>Woods</u>, like the plaintiff here, purchased a motor vehicle in "as is" condition.  <u>Woods</u>, 122 N.H. at 324 (quotation omitted).  However, the seller in <u>Woods</u>, unlike the defendant here, represented that the motor vehicle "was in good condition and ran properly." <u>Id</u>. (quotation omitted).  Because the seller's representation that the motor vehicle ran properly "was fundamental to the consideration on which the sale was predicated," we agreed with the master that the plaintiff was entitled to revoke his acceptance of it.  <u>Id</u>. (quotation omitted).  In contrast to the seller in <u>Woods</u>, there is no evidence that the defendant in this case represented that the motor vehicle ran well; rather, the record in this case establishes that the defendant specifically notified the plaintiff, in writing, that it would not pass a New Hampshire motor vehicle inspection.

At oral argument, the plaintiff asserted that the motor vehicle he purchased was non-conforming because it was beyond repair and that he did not contract for such a vehicle.  However, the evidence that the motor vehicle was beyond repair was conflicting, and those conflicts were for the trial court to resolve.  <u>See</u> <u>Cook v. Sullivan</u>, 149 N.H. 774, 780 (2003) (explaining that "we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight

4

to be given evidence").  Although the plaintiff testified that the motor vehicle could not be repaired, the defendant testified that, not only could it be repaired, but that, after the plaintiff purported to revoke his acceptance, the defendant offered to repair the vehicle at no charge.

We next address the plaintiff's assertion that the defendant violated RSA 358-F:2 and :3.  RSA chapter 358-F governs the sale of unsafe used motor vehicles.  RSA 358-F:2 provides:

> **Inspection.**  Before selling to any customer any used motor vehicle which is unsafe for operation upon the highways pursuant to RSA 266:8, the dealer shall, upon the request of the customer, conduct or have conducted a safety inspection of such vehicle.  If the vehicle is found to be unsafe for operation, the dealer may sell the vehicle to the customer without correcting the defects, but only if the dealer presents to the customer at the time of sale a notice which states:
>
> > This motor vehicle will not pass a New Hampshire inspection and is unsafe for operation.  The following defects must be corrected before an inspection sticker will be issued.
>
> The dealer shall list all inspection defects under this statement and specify the date on which the inspection was conducted and the person who performed the inspection.  The dealer may make a reasonable charge for conducting the inspection.

RSA 358-F:3 requires "[e]ach dealer [to] notify each customer of his rights under this chapter before selling an unsafe used motor vehicle to the customer" and to "obtain a written acknowledgment from the customer that he has been so notified."

The plaintiff argues that the defendant violated these provisions by allowing the sale to proceed without an inspection.  The plaintiff asserts:  "A prudent dealer would not allow the sale to proceed until an inspection is performed . . . ."  The plaintiff contends that he requested an inspection and that the defendant "declined to provide it, and sold [him] the vehicle anyways."  He also asserts that the defendant "advised him that regardless of whether the mechanic was there or not, [he] would have to register the vehicle first before being able to have it inspected."

Notwithstanding the plaintiff's assertions regarding the import of the evidence, when viewed in the light most favorable to the defendant, the evidence supports the trial court's decision.

The trial court reasonably could have found that the defendant did not refuse to conduct an inspection, but instead informed the plaintiff that one could not be conducted that day because the mechanic was not at work. The trial court could also have reasonably found that the plaintiff insisted on buying the car anyway, without an inspection — in other words, that the plaintiff changed his mind about requiring an inspection before purchasing the vehicle. As the plaintiff notes in his brief, the defendant testified that he advised the plaintiff that he "had two options: either come back later to have the vehicle inspected, or buy it as is without an inspection." The trial court reasonably could have found that the plaintiff chose the latter option.

Moreover, although the plaintiff testified that the defendant told him that "even if his mechanic was there, he would have to register the vehicle first before he could get it inspected," the defendant testified to the contrary:

Q [The plaintiff] asked you to have an inspection done, did he not?

A He asked me that day, but the guy again, the shop was closed. I -- my reason question why I think this, why he don't come back on Monday. Why buy the car right away? Why you don't come back on Monday, take the car to the shop and then if you like, you like it. I didn't push him to buy the car that day. Nobody, that's a freedom in this country.

Q You represented to him, did you not, that in order to have the vehicle inspected, it first needs to be registered in his name?

A I said to him this. You have to go – –

Q Thank you. You've answered my question.

THE COURT: He can explain the answer. You can – –

THE WITNESS: I said to him this. When you go register the car, he asked me for 20 days plate. Okay. And then when he asked me for 20 days plate, I said to him, to be legal to put a 20 days plate on the car, the car has to be inspected. Then we don't need all this signed paperwork as is or whatever. Then I said to him, I can't put the 20-days plates for you because the car is not inspected. And then he asked me how I going to do this. I says you have to go and register the car and then you have ten days for inspection and you buy the car strictly as is.

Although the plaintiff characterizes the defendant's testimony differently, "[i]t was within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented," Cook, 149 N.H. at 780, and to accept a

6

reasonable contrary characterization of the evidence.  Because, when viewed in the light most favorable to the defendant, the evidence supports the trial court's determination that he did not violate his obligations under RSA chapter 358-F, we uphold its decision.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.