# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0148, <u>Todd Harbour & a. v. Henry Farrin, Jr. & a.</u>, the court on December 20, 2019, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendants, Henry Farrin, Jr. and Dyann L. Farrin, appeal an order of the Superior Court (<u>Kissinger</u>, J.), following a bench trial, denying their counterclaim for trespass against the plaintiffs, Todd Harbour and Melissa Harbour. The defendants contend that: (1) the evidence did not support the trial court's finding that Henry Farrin consented to the plaintiffs cutting down more than "a couple" of the defendants' trees; (2) any consent Henry Farrin gave was ineffective because Dyann Farrin did not also give consent; (3) the plaintiffs exceeded the defendants' consent; and (4) even if the plaintiffs cut the defendants' trees by mistake, they remain responsible for wrongful cutting. We assume, without deciding, that these issues are preserved.

When reviewing a trial court's decision rendered after a hearing on the merits, we will uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. <u>O'Malley v. Little</u>, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. <u>Id</u>. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. <u>Id</u>. We review the trial court's application of the law to the facts <u>de</u> <u>novo</u>. <u>Id</u>.

In this case, the plaintiffs cut down approximately twenty 100-foot-tall white pines growing on the sideline between their lot and the defendants' lot. The defendants agree that Henry Farrin gave the plaintiffs permission to use the defendants' field to "drop" trees, but contend that this permission was limited to "a couple" of trees. After the trees were cut, Henry Farrin complained to the plaintiffs about the damage to the defendants' field. The defendants contend, but the plaintiffs dispute, that Henry Farrin also complained about the number of trees cut. Months after the trees were removed, the parties ascertained that the trees had been standing on land deeded to the defendants. A surveyor testified that the trees stood between approximately one and three feet from the plaintiffs' lot. However, the plaintiffs claimed ownership of approximately 1,632 square feet

of the defendants' land on which the trees had stood, by right of adverse possession.  Following a view and a three-day hearing, the trial court denied the plaintiffs' adverse possession claim, and they have not appealed that decision.

The trial court also denied the defendants' counterclaim for trespass.  The defendants contend that the trial court's finding that their consent to the use of their field was not limited to a certain number of trees is unsupported by the evidence.  We review sufficiency of the evidence claims as a matter of law, viewing the evidence in the light most favorable to the prevailing party, here, the plaintiffs, and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law.  Smith v. Pesa, 168 N.H. 541, 544 (2016).

The trial court was not required to accept Henry Farrin's testimony that his consent was limited to "a couple" of trees, see O'Malley, 170 N.H. at 275; the trial court's finding that his consent was not so limited is supported by Todd Harbour's testimony that he "explained [to Henry Farrin] that we were taking down our trees and that I would really appreciate . . . using the field to take the trees down because if . . . the trees [were felled] in the other direction, . . . [a]ny one of them would have crushed the [plaintiffs'] house."  To the extent that the defendants contend that this testimony was not credible, we defer to the trial court's contrary determination.  See id.

Moreover, e-mails between Todd Harbour and Henry Farrin, both before and after the trees were cut, support the trial court's finding that Henry Farrin's consent was not limited to "a couple" of trees.  For example, after receiving Henry Farrin's verbal consent, Todd Harbour e-mailed Henry Farrin:  "We really appreciate your help with the pine trees.  Once they are down, you will see more of our place, but we want to make sure that it is a good view."  The trial court could have reasonably inferred that removing only two trees would not have substantially altered the defendants' view.

Another e-mail from Todd Harbour to Henry Farrin referred to a discussion, prior to the tree removal, regarding privacy fencing.  The trial court was not required to accept Henry Farrin's explanation that the privacy fencing was only for the plaintiffs' backyard and could have reasonably inferred that the parties would not have discussed privacy fencing unless they anticipated, consistent with Todd Habour's representation, the removal of all the trees.

Viewing the evidence in the light most favorable to the plaintiffs, we conclude that the trial court's finding that Henry Farrin's consent to the use of his field was not limited to a certain number of trees is supported by the evidence and not legally erroneous.  See Pesa, 168 N.H. at 544.

We next address the defendants' contention that Henry Farrin's consent was ineffective because his co-tenant, Dyann Farrin, did not also consent.  We

2

have generally held that one co-owner's consent cannot bind another co-owner. Hamblett v. Nashua, 102 N.H. 318, 320 (1959) (addressing consent to abutter's request for variance). However, "[i]f words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact." Restatement (Second) of Torts § 892(2), at 362 (1979). Consent "may be manifested by action or inaction and need not be communicated to the actor." Restatement (Second) of Torts § 892(1), at 362; cf. 93 Clearing House, Inc. v. Khoury, 120 N.H. 346, 349 (1980) (stating agency relationship may be implied from parties' conduct or other evidence of intent).

In this case, the trial court specifically found that Dyann Farrin "conveyed that she acquiesced to Henry's actions" in conveying consent to the plaintiffs. The evidence supports this finding. First, Dyann Farrin testified that Henry Farrin told her that he had consented to the plaintiffs cutting the trees. Although she further testified that Henry Farrin's consent was limited to "dropping" "a couple" of trees into the defendants' field, the trial court was not required to accept that latter part of her testimony. See O'Malley, 170 N.H. at 275. Second, Dyann Farrin subsequently met with the plaintiffs before the trees were cut, but did not deny the plaintiffs her permission or limit the scope of Henry Farrin's consent.

The defendants contend that she "had no opportunity . . . to manifest a consent to the cutting . . . because the subject of tree cutting and use of the field was not addressed" at this meeting. However, Henry Farrin testified that all four parties met together at a kitchen table and that he and Todd Harbour discussed the location of the lot line and the trees. In context, Dyann Farrin's failure to restrict her apparent consent could be reasonably understood as apparent consent identical to that of Henry Farrin. It was incumbent upon her to negate her apparent consent, if she so desired. See Restatement (Second) of Torts § 892A comment on subsection (5), at 369 (stating that consent terminates when actor has reason to know that other no longer consents). See Restatement (Second) of Torts § 892, at 362.

On this record, viewing the evidence in the light most favorable to the plaintiffs, we conclude that the trial court's finding that the defendants consented to the plaintiffs cutting the trees and "dropping" them into the defendants' field is supported by the evidence and not legally erroneous. See Pesa, 168 N.H. at 544. Accordingly, the plaintiffs' use of the defendants' field did not exceed the defendants' consent.

Finally, we address whether the plaintiffs wrongfully cut the defendants' trees. The defendants contend that Todd Harbour never requested permission to cut the defendants' trees because, at the time, he believed that the trees were on his land. The defendants argue that the plaintiffs knew or should have known, before they cut the trees, that the trees belonged to the defendants because of the lot lines shown on the municipal assessor's maps. However, Henry Farrin

3

represented to the trial court that "[t]he parties were aware that an assessor's map may not be an accurate rendition of a boundary line."

The trial court was entitled to rely upon Todd Harbour's testimony that, when he cut the trees, he believed he owned them and upon Henry Farrin's testimony that, when he gave his consent, he did not know on whose property the trees stood and was not concerned about which trees the plaintiffs intended to cut. The trial court could have reasonably inferred from this testimony that the defendants consented to the removal of the trees regardless of who owned them. See Restatement (Second) of Torts § 892A(1), at 364 (stating one who gives consent cannot recover in tort for the conduct or the harm resulting from it).

This inference is further supported by the parties' e-mails after the trees were removed, in which Todd Harbour addressed Henry Farrin's concerns about the damage to his field, but did not mention any concern raised by Henry Farrin that the plaintiffs had cut the defendants' trees. The trial court found, and the evidence supports, that "these emails tend to show Henry was upset only with the damage to, and debris left on, his field by the logging operation."

To the extent that the parties were mistaken about the ownership of the trees, the trial court correctly stated that "consent 'induced . . . by a substantial mistake concerning the nature of the [trespassory] invasion' is nonetheless valid unless 'the mistake is known to the [trespasser] or is induced by the [trespasser's] misrepresentation'" (quoting Restatement (Second) of Torts § 892B(2), at 370. In this case, the evidence does not indicate that, when the trees were cut, the plaintiffs knew that they stood on the defendants' land or made any misrepresentation to the defendants.

On this record, we conclude that the trial court's implicit finding that the defendants consented to the plaintiffs cutting the defendants' trees is supported by the evidence and not legally erroneous. See Pesa, 168 N.H. at 544. Any remaining issues raised by the defendants in their brief either are not sufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**

4