**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0071, <u>E.D. v. J.N.</u>, the court on September 6, 2022, issued the following order:**

Having considered the brief and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  The defendant, J.N., appeals the decision of the Circuit Court (<u>Mace</u>, J.), following a hearing, granting a domestic violence final order of protection to the plaintiff, E.D.  <u>See</u> RSA 173-B:5 (2022).  The defendant argues that the evidence was insufficient to support the order or the trial court's findings on reconsideration.  We affirm.

We review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or erroneous as a matter of law.  <u>Achille v. Achille</u>, 167 N.H. 706, 715 (2015).  We view the evidence in the light most favorable to the prevailing party.  <u>Smith v. Pesa</u>, 168 N.H. 541, 544 (2016).

To be entitled to a domestic violence final order of protection, the plaintiff must establish, by a preponderance of evidence, that the defendant engaged in "abuse."  RSA 173-B:5, I.  "Abuse" means the commission or attempted commission of one or more enumerated crimes by a family or household member or a current or former sexual or intimate partner when such conduct "constitute[s] a credible present threat" to the plaintiff's safety.  RSA 173-B:1, I (2022); <u>see</u> <u>S.C. v. G.C.</u>, 175 N.H. ___, ___ (May 11, 2022) (slip op. at 4).  The enumerated crimes that may constitute abuse include "[d]estruction of property as defined in . . . RSA 634:2" (criminal mischief), and "[h]arassment as defined in RSA 644:4."  <u>See</u> RSA 173-B:1, I.

The trial court found that the defendant committed criminal mischief and harassment when he "intentionally damaged the former marital homestead after the court awarded the property to [the] plaintiff, intentionally left his feces in toilets in the house mixed with [a] cut-up photograph of [the] plaintiff, [and] allowed the children to draw a crude image of the plaintiff on a wall of her house and then drew or permitted other adults to draw violent images thereon such as a noose and blood near 'her' throat."  In moving for reconsideration, the defendant argued that, because the plaintiff had not entered the marital home between "Christmas, 2019," and October 3, 2021, she was unable to offer any evidence that he committed such acts <u>after</u> July 26, 2021, the date of the court's final divorce decree awarding the marital residence to the plaintiff.  In its order denying the defendant's motion, the court noted that it was "beyond

dispute" that the defendant engaged in the conduct at issue, or permitted others to do so, after the court issued its anti-hypothecation order at the start of the parties' divorce case.

On appeal, the defendant argues that he received an anti-hypothecation "notice," not an order, and that he did not violate any orders contained in the notice. See Land America Commonwealth Title Ins. Co. v. Kolozetski, 159 N.H. 689, 690 (2010) (anti-hypothecation order enjoins parties from, among other things, transferring, encumbering, or disposing of marital property while marital proceedings are pending). In particular, he argues that the notice did not require him "to keep the home in good repair until the final order" was issued in the divorce case. The "notice" specifically "restrained" each party "from selling, transferring, encumbering, hypothecating, concealing or in any manner whatsoever disposing of any property . . . belonging to either or both parties except" under certain defined circumstances. See RSA 458:16-b (2018) (restraining orders regarding property in marital cases). Regardless of whether the defendant received an "order" or a "notice," or whether by damaging or removing property from the marital homestead, he violated the restraining order contained in it, the trial court found that he engaged in the conduct after the court issued it, which was on or about October 7, 2019, while the parties were still married.

The plaintiff testified that when she entered the marital home on October 3, 2021, she found that the defendant had damaged the property and removed a number of fixtures and appliances. The defendant testified that, "[a]s far as the contents of the house, I was asked to get my stuff and leave and that is what I did," insisting that, "I paid for every single item in that house." RSA 458:16-a defines marital property to include "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." RSA 458:16-a, I (Supp. 2021); In the Matter of Merrill & Merrill, 174 N.H. 195, 197 (2021). Whether or not the defendant paid for "every single item" in the house, the marital residence, together with its fixtures and appliances, constituted marital property in which both parties had an interest. See RSA 458:16-a, I.

The criminal mischief statute provides, in relevant part, that "[a] person is guilty of criminal mischief who, having no right to do so nor any reasonable basis for belief of having such a right, purposely or recklessly damages the property of another." RSA 634:2, I (Supp. 2021). Pursuant to RSA 634:2, IV (2016), the term "property of another" has the same meaning as in RSA 637:2, IV (2016), which defines the term to include "property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property." RSA 637:2, IV. We conclude that the evidence was sufficient to show that between October 7, 2019 and October 3, 2021, the defendant,

2

"having no right to do so nor any reasonable basis for belief of having such a right, purposely or recklessly damage[d] the property of another," namely, the marital residence in which the plaintiff had an interest, thereby committing criminal mischief.  See RSA 634:2, I.

The defendant next argues that neither the cut up photograph and feces in the toilet nor the depiction of the plaintiff on the wall were sufficient to show harassment under RSA 644:4.  A person who "[i]nsults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response" commits the act of harassment under RSA 644:4, I(c) (Supp. 2021).  The trial court found that the defendant "conceded he cut up a wedding photograph of [the plaintiff], placed it in an old toilet he installed in the former marital home . . . defecated on the cut up photograph, and then left the cut up photograph and feces for [the plaintiff] to find when she resumed occupancy of the former [marital] residence."  The court found it "hard to imagine conduct more likely to 'insult' a reasonable person and equally hard to image that any reasonable person would not react in a 'violent' or 'disorderly' manner upon discovery of that person's image cut up and covered in feces clearly left as a message by the offending actor."  We conclude that the evidence was sufficient to support the court's finding of harassment under RSA 644:4, I(c).

The defendant next argues that if the conduct occurred as early as October 7, 2019, when he received the anti-hypothecation notice, then it was too remote in time to constitute a credible threat to the plaintiff's safety.  "The court may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the petitioner to fear for his or her safety or well-being."  RSA 173-B:1, I.  Regardless of exactly when the defendant engaged in the described conduct, the evidence supports the court's finding that he intentionally "left the cut up photograph and feces for [the plaintiff] to find when she resumed occupancy of the former [marital] residence," which was on or about October 3, 2021, two days before she filed the domestic violence petition.  The plaintiff described the defendant's conduct as "over the top" and "sick," and she was afraid that he was "going to snap."  Under these circumstances, we conclude that the defendant's conduct "reflect[ed] an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for . . . her safety or well-being."  RSA 173-B:1, I.

Finally, the defendant argues that neither the photograph in the toilet nor the drawing on the wall represented an ongoing, credible threat to the plaintiff's physical safety.  See Knight v. Maher, 161 N.H. 742, 745-46 (2011).  We disagree.  The trial court found that the drawing depicted the plaintiff with a "noose near the throat area" and blood near her throat.  The trial court was not required to accept the defendant's testimony that he was unaware of the drawing until the first day of the domestic violence hearing.  See In the Matter

3

of Aube & Aube, 158 N.H. 459, 466 (2009) (The trial court, as fact finder, may accept or reject, in whole or in part, the testimony of any witness or party.).

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**